UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                  Case No.  6:13-cr-285-Orl-28GJK

JERMAL MARQUIS CHAMBERS

---

ORDER

Defendant Jermal Marquis Chambers has filed a "Motion To Suppress Physical Evidence" (Doc. 21) pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C). The motion seeks to exclude from evidence firearms, ammunition, silencers, cocaine, and paperwork . These items were seized when deputies of the Orange County Sheriff executed a warrant to search a house in Apopka, Florida, owned by Defendant's grandmother. Defendant argues that the warrant was issued without probable cause and that the search was more expansive than necessary.[1]  Based on the papers filed, I conclude that the motion must be denied.

I. Background

During the several days before the search of the Apopka residence, there had been a series of shootings.   Sheriff's deputies considered Defendant to be a suspect in a shooting on May 7, 2013, that injured a victim. (Aff., Doc. 21, at 5). Later the same day, Defendant was shot at while leaving an apartment. (Id.). On the night of May 10, 2013, an

---

[1] Defendant requested an evidentiary hearing in his motion (Doc. 21), but at the status conference, the parties agreed that the question can be decided without an evidentiary hearing (see Doc. 24).

armed assault was made on the Apopka house while Defendant and others were inside. (Id.).[2] When deputies arrived to the house, they found 56 casings of ammunition of various caliber and approximately 20 bullet holes in the house. (Id.).

In furtherance of the investigation, a detective with the Sheriff's office submitted an affidavit to a state judge in support of an application for a warrant to search the Apopka residence. In his affidavit, the detective provided a detailed description of the shooting into the Apopka house but provided no details with regard to the other shootings, except noting that Defendant was a suspect in the first May 7 shooting. (Id.). No facts were alleged in support of the conclusion that Defendant was a suspect. The detective stated that he believed that "[b]allistic projectiles, casings, trace evidence in the form of blood, hair, DNA, fibers, items of serology, and other body fluids, any handguns, rifles, and it's [sic] munitions[,] which is evidence of a felony violation of the laws of the State of Florida relating to Shooting into an Occupied Dwelling, to-wit: Florida Statute 790.19-13 . . . is currently being kept" in the Apopka residence. (Id. at 4). The affidavit did not state that the detective believed that evidence of the other shootings would be found in the house, nor did it mention shots being fired from inside the residence on May 10 or a person therein being injured.

Upon execution of the warrant, deputies discovered, in addition to ballistic projectiles, the following items in green canvas bags in the attic over Defendant's bedroom in the Apopka house:

---

[2]The exact timeline of these events is not made clear in the affidavit in support of a search warrant. The Government's Response (Doc. 22) describes the first two shootings as occurring on May 7 and the assault on the Apopka house as occurring on May 10.

seven firearms, hundreds of rounds of ammunition, empty and loaded ammunition magazines, . . . black knit ski masks, a black sweatshirt, black shirts, a Halloween-type skeleton mask, multiple gloves, a tactical vest, a flak-jacket, and five oil filters, three of which had been converted to operate as a silencer, or muffler.

(Resp. in Opp'n, Doc. 22, at 4-5).  Also located in one of the canvas bags were "cocaine packaged for distribution and in loose powder form, scales, a razor blade, [and] small plastic bags." (Id.).  By his motion, Defendant seeks to exclude these items from evidence.

In response to Defendant's motion to suppress, the Government points out that the motion does not specifically cite to a defect in the warrant[3] before advancing the following arguments:  1) that probable cause existed for issuance of the warrant; 2) that the search did not extend beyond the scope of the warrant; 3) that the cocaine, although not an item listed in the affidavit or warrant, was subject to seizure because it was contraband in plain view; and 4) even if the warrant was defective, the Leon[4] good faith exception applies.  For these reasons, the Government opposes Defendant's motion to suppress.

## II. Analysis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In determining whether probable cause existed to justify the issuance of a warrant, a reviewing court should

---

[3]To be sure, neither the motion, nor the affidavit and the warrant, are works of precision.

[4]468 U.S. 897 (1984).

not review the magistrate's determination de novo but should assess "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause." Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (per curiam).

Applying this standard, it is evident that there is no reason to question that the state court judge had probable cause to issue the warrant to allow the detectives to search for ballistic projectiles. The judge had been advised as to the number of casings outside the house and the number of holes in the walls and had probable cause to believe that evidence of shooting into the Apopka dwelling would be found in that house. There is no fault with the warrant to the extent it authorizes a search of the house, including its attic, for projectiles and casings.

To the extent Defendant argues that the search of the green canvas bags located in the attic exceeded the scope of the warrant, the argument fails. The officers reasonably could have searched for projectiles in any part of the Apopka residence. There was at the very least a probability that one or more of the projectiles was fired into the attic of the single-level house,[5] and it was reasonable for the deputies to conclude that one or more of the projectiles could have hit and been lodged in the bags. The officers were thus authorized to open the bags.[6] See United States v. Jackson, 120 F.3d 1226, 1228 (11th Cir. 1997); see also United States v. Smith, 459 F.3d 1276, 1291 (11th Cir. 2006). When

_____

[5]In fact, the Government states that it found a projectile in the attic that had apparently struck one of the bags. (Resp. at 5).

[6]It is unclear whether the officers were actually searching for projectiles when they opened the bags. Defendant does not argue that they were searching for something other than projectiles, and in any event, they did have authority to search the bags for projectiles.

opening one of the bags, the deputies saw cocaine and drug paraphernalia. Although these items were not listed in the warrant, they were legally seized under the "plain view" doctrine. See Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971). Because the deputies were in the process of searching for projectiles when they observed the cocaine and paraphernalia, which they immediately recognized as contraband, they were entitled to seize the items as evidence. United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990).

For the foregoing reasons, Defendant's motion is without merit to the extent it seeks to exclude ballistic projectiles and cocaine seized from the Apopka residence.[7]

The warrant also authorized deputies to seize handguns, rifles, and munitions. Indeed, such items were found in some of the green bags located in the attic. Although not clearly stated, Defendant seems to argue that to the extent the warrant allowed seizure of these items, it was invalid. There are no facts asserted in the affidavit supporting a common sense conclusion that these items were evidence related to the crime of the May 10 shooting into the Apopka residence. Additionally, the Government does not allege that the officers immediately had probable cause that the firearms were contraband because Defendant was a felon or for any other reason. (See Doc. 22). Thus, the "plain view" exception does not apply. Smith, 459 F.3d at 1290; see also Jenkins, 901 F.2d at 1081-82. The Government, without conceding the invalidity of the warrant, asserts that the good faith exception enunciated in United States v. Leon, 468 U.S. 897 (1984), bars exclusion of the evidence.

---

[7]Defendant's motion also contains a vague reference to paperwork that he moves to suppress. (Doc. 21 at 2). The motion contains no information about the contents of the paperwork or whether the paperwork was even removed from the house; for this reason, Defendant's argument that the paperwork should be suppressed is without merit.

Under the <u>Leon</u> good faith test, officers conducting a search may ordinarily rely on a judge's determination that probable cause existed for issuance of the warrant. <u>See Leon</u>, 468 U.S. at 926. Even if the warrant is defective, evidence will not be suppressed if the officers in good faith relied on the warrant. <u>See id.</u> The good faith exception does not apply only in four situations: (1) where the officer relied on information he knew was false in obtaining the warrant; "(2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; [or] (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid." <u>United States v. Robinson,</u> 336 F.3d 1293, 1296 (11th Cir. 2003). The Government bears the burden of proving that the officers' conduct satisfied the <u>Leon</u> good faith exception. <u>Id.</u> at 1297; <u>United States v. Gant</u>, 759 F.2d 484, 487 (5th Cir. 1985) ("[In <u>Leon</u>, when] the defendants convinced the district court that probable cause was lacking, the government was required to prove that the evidence . . . was nevertheless admissible because of the officers' objectively reasonable reliance on the warrant.").

It is easy to conclude that the first and fourth bases for exception to the good faith test under <u>Robinson</u> do not apply here. Defendant offers no argument–and the record does not otherwise suggest–that the detective offered false information in seeking a warrant. He described the series of violent events leading to the assault on the Apopka house and told

the issuing judge what evidence he thought would be located in the home.  Also, the warrant was not deficient in the description of the place to be searched or the items to be seized.

The two remaining <u>Robinson</u> exceptions relate to judicial conduct and are closer calls. The facts contained in the detective's affidavit did not support the breadth of the warrant, which allowed for the search for items that were not related to the crime of shooting into the occupied Apopka dwelling.  The other crimes–the May 7 shootings–were mentioned in the application for the warrant and Defendant was identified as a suspect, but there were no facts connecting Defendant with either of the prior shootings.  In other words, while the facts stated in the warrant justify probable cause to search for projectiles, they do not justify probable cause to search for guns, which could only be evidence of the prior shootings.

Although I would not have authorized the search for all of the items included in the warrant, I cannot conclude that the state court judge abandoned his judicial role in doing so. A judge abandons his judicial role "by failing to independently assess the affidavit or by participating in the process beyond the issuing of the warrant."  <u>United States v. Cruse</u>, 343 F. App'x 462, 465 (11th Cir. 2009).  If the judge acts as a "rubber stamp" and relies only "on the mere fact that officers are asking for a warrant" without reading the affidavit and warrant, the judge has been found to abandon his judicial role.  <u>Id.</u>  The defendant must present evidence to show that the judge acted as a rubber stamp, and the district court's finding that the warrant affidavit lacked probable cause "does not automatically indicate that the state judge abandoned his judicial role."  <u>United States v. Hendon</u>, 253 F. App'x 809, 812 (11th Cir. 2007).

-7-

Defendant has failed to put forth any evidence or argument that the state judge either failed to independently assess the affidavit or participated in the process beyond the issuing of the warrant.  In addition, there was probable cause to believe that at least some of the items listed in the warrant were located in the house, which further shows that the judge did not abandon his judicial role.  The fact that I have found that the affidavit lacked probable cause for some of the items seized does not automatically indicate that the state judge abandoned his judicial role.

Finally, there is the question of whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  This determination is made by looking only at the affidavit on its face.  Robinson, 336 F.3d at 1296.  As noted above, there was probable cause to support the search of the house.  The problem was that the affidavit requested permission to search for and seize items that were not explained as being related to Defendant or the Apopka residence.  However, though these items lacked a factual basis for probable cause, the affidavit did explain the officers' theory for why these items would be found in the residence.  That, in combination with the probable cause for some items in the warrant, makes official belief of probable cause for those items not entirely unreasonable.  The officers acted in reasonable reliance on the warrant, and thus the Leon good faith exception applies.

### III. Conclusion

The warrant was valid with respect to the projectiles, casings, and paperwork.  Further, the Leon good faith exception applies to any evidence listed in the warrant for which

there was no probable cause. Accordingly, Defendant's Motion to Suppress Physical Evidence (Doc. 21) is hereby **DENIED**.

      **DONE** and **ORDERED** in Orlando, Florida on this ___24___ day of February, 2014.

                                  JOHN ANTOON II
                                  United States District Judge

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jermal Marquis Chambers